IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| ELLIS CROFT | : | NO.  95-496-1 |

**MEMORANDUM**

Padova, J.                                                                                               **July 9, 2020**

Defendant Ellis Croft has filed a Motion for modification of his sentence pursuant to 18

U.S.C. § 3582(c)(1)(A)(i), arguing that the Court should reduce his sentence to time served and

release him from the Federal Correctional Institution at Schuylkill ("FCI Schuylkill") because of

the COVID-19 pandemic and his medical condition.  The Government opposes Croft's Motion on

the grounds that he has not demonstrated the extraordinary and compelling circumstances

necessary to obtain relief under § 3582(c)(1)(A) and that consideration of the sentencing factors

in 18 U.S.C. § 3553(a) do not support a conclusion that Croft should be released.  We held Oral

Argument on Croft's Motion by videoconference on June 17, 2020.  For the reasons that follow,

we now grant the Motion.

**I.      PROCEDURAL BACKGROUND**

On August 15, 1996, Croft was sentenced to 444 months' imprisonment and 5 years of

supervised release following a jury trial in which he was found guilty of all six counts of an

Indictment that charged him with crimes arising out of an armed robbery of a furniture store.[1]  In

---

[1] The six counts of the Indictment charged Croft with (1) Hobbs Act conspiracy, in
violation of 18 U.S.C. § 1951; (2) Hobbs Act robbery, in violation of 18 U.S.C. § 1951; (3) using
and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c); (4) Hobbs
Act extortion, in violation of 18 U.S.C. § 1951; (5) attempted possession of cocaine with intent to
distribute, in violation of 21 U.S.C. § 846; and (6) using and carrying a firearm during and in

the armed robbery, Croft stole jewelry, $3,000 in cash, and—believing the furniture store to be a

drug stash house—demanded $200,000 and 25 bricks of cocaine.  On January 23, 2019, Croft

moved to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) based on an amendment to the

United States Sentencing Guidelines that reduced the base offense level for certain drug offenses.

On June 19, 2019, we granted that motion and reduced Croft's sentence to 410 months'

imprisonment.  Croft is now projected to be released on September 17, 2024.

## II.     LEGAL STANDARD

As a general rule, a district court may not modify a defendant's sentence after it has been

imposed.  18 U.S.C. § 3582(c); see also Dillon v. United States, 560 U.S. 817, 825 (2010).  But

the First Step Act provides for a compassionate release exception to that general rule, stating that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon
> motion of the defendant after the defendant has fully exhausted all administrative
> rights to appeal a failure of the Bureau of Prisons to bring a motion on the
> defendant's behalf or the lapse of 30 days from the receipt of such a request by the
> warden of the defendant's facility, whichever is earlier,[2] may reduce the term of
> imprisonment (and may impose a term of probation or supervised release with or
> without conditions that does not exceed the unserved portion of the original term
> of imprisonment), after considering the factors set forth in section 3553(a) to the
> extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> *      *      *
>
> and that such a reduction is consistent with applicable policy statements
> issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).  The applicable policy statement, set forth in U.S.S.G. § 1B1.13,

provides in relevant part that the court may reduce a term of imprisonment if it finds, after

---

commission of a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

[2] The Government does not dispute that Croft has fully exhausted his administrative
remedies.  (See Gov't Resp. at 5-6.)

consideration of the factors in 18 U.S.C. § 3553(a), that "[e]xtraordinary and compelling reasons warrant the reduction," "[t]he defendant is not a danger to the safety of any other person or to the community," and "[t]he reduction is consistent with this policy statement."  Although neither U.S.S.G. § 1B1.13 nor Congress defines the phrase "extraordinary and compelling," the Sentencing Commission's commentary to § 1B1.13 provides guidance.  See U.S.S.G. § 1B1.13 cmt. n.1.  The commentary provides, among other things, that "extraordinary and compelling reasons" can include (1) certain specified serious medical conditions (a terminal illness or a serious medical condition "that substantially diminishes the ability of the defendant to provide self-care"), (2) the defendant's advancing age (over 65 with various qualifications), (3) the defendant's family circumstances, and (4) "[o]ther [r]easons . . . [a]s determined by the Director of the Bureau of Prisons" to be extraordinary and compelling, either alone or in combination with the three prior reasons.  U.S.S.G. § 1B1.13 cmt. n.1.

## III.   DISCUSSION

Croft argues in his Motion that he has established an extraordinary and compelling basis for his release under 18 U.S.C. § 3582(c)(1)(A)(i) due to the risk of COVID-19 at FCI Schuylkill and his medical condition.  Specifically, he argues that there is a high chance that he could contract COVID-19 at FCI Schuylkill because prisons create the ideal environment for the transmission of COVID-19, and that his medical condition—he suffers from sarcoidosis (fibroids and tumors on his lungs) and hypertension—may leave him especially vulnerable to serious complications and death from the virus.[3]

---

[3] Croft also maintains that he suffers from asthma and a history of prostate issues.  However, during Oral Argument and in Croft's Reply Memorandum, counsel for Croft argued only that his hypertension and sarcoidosis put him at higher risk for severe illness or death from COVID-19.  (See Def. Reply at 1; 6/17/20 Hr'g Tr. at 2:23-3:2.)  Furthermore, as the Government points out, Croft's medical records do not show that he has a history of asthma.  We will thus limit

To start, we note that FCI Schuylkill has reported just one case of COVID-19 inside its facilities.  See Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (accessed July 8, 2020) (stating that one inmate had tested positive for the virus).  However, as the Government admits, FCI Schuylkill has not implemented widespread testing for the virus, so we cannot be certain of the true spread of infection at the prison.  (6/17/20 Hr'g Tr. at 16:15-17); Compare Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (accessed July 8, 2020) (reporting 49 inmates with completed tests at FCI Schuylkill), with Bureau of Prisons, FCI Schuylkill, https://www.bop.gov/locations/institutions/sch/ (accessed July 8, 2020) (reporting 1,052 total male inmates at FCI Schuylkill).

In any event, the mere possibility that the COVID-19 virus could spread within FCI Schuylkill cannot alone provide the "extraordinary and compelling" reasons that would justify Croft's release.  See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering [the Bureau of Prison's] statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted)); United States v. Rodriguez, Crim. A. No. 03-271, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020) (stating that the fact that "prison is a particularly dangerous place for [the defendant]" in light of COVID-19, is not alone an extraordinary and compelling reason for compassionate release).  We must therefore determine whether Croft's individual circumstances, in combination with the possibility of a COVID-19 outbreak at the prison, are so extraordinary and compelling that we should reduce his sentence and release him from prison before his projected release date.

---

our discussion of Croft's medical condition to his hypertension and sarcoidosis.

In support of his request for a sentence reduction, Croft has submitted his Bureau of Prisons ("BOP") medical records, which show that he is a 63-year-old male who suffers from hypertension and sarcoidosis.  (See Gov't Resp. Ex. B at 8, 10 of 140.)  While the Government contends that hypertension has not been identified by the Centers for Disease Control and Prevention (the "CDC") as a possible risk factor for severe illness from COVID-19 (see Gov't Resp. at 18-19), the CDC website specifically states that "hypertension (high blood pressure) . . . , may increase your risk of severe illness from COVID-19."  CDC, Coronavirus Disease 2019, *People of Any Age with Underlying Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated June 25, 2020).  The CDC website also states that "chronic lung disease[], . . . may increase your risk of severe illness from COVID-19."  Id.

The Government does not dispute that sarcoidosis is a type of lung disease and that under CDC guidelines, *chronic* sarcoidosis can qualify as a condition that may put someone at greater risk for severe illness from COVID-19.  (See Gov't Resp. at 18-19.)  Instead, the Government argues that, in this case, Croft's sarcoidosis is not chronic because it is "well under control with little pharmaceutical intervention," and thus does not, under CDC guidelines, put him at higher risk of a worse outcome from COVID-19.  (Id. at 19; see also 6/17/20 Hr'g Tr. at 7:13-9:23.) However, we are not convinced that Croft's sarcoidosis is not chronic merely because it is being controlled with treatment.  In fact, the CDC, on its website, defines "chronic diseases" to include "conditions that last 1 year or more and require ongoing medical attention . . . ."  CDC, National Center for Chronic Disease Prevention and Health Promotion, *About Chronic Diseases*, https://www.cdc.gov/chronicdisease/about/index.htm (last modified Oct. 23, 2019).  Here, Croft's medical records reveal that he has been treated for his sarcoidosis for about 13 years.  (Gov't Resp., Ex. B at 7 of 140.)  Croft's lung disease therefore qualifies as chronic under the CDC's guidance.

We thus conclude that Croft's medical condition—which includes both sarcoidosis and hypertension—leaves him at higher risk of severe illness and death from COVID-19.[4]  See CDC, Coronavirus Disease 2019, *People of Any Age with Underlying Medical Conditions* (stating that "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19").  We further conclude that the threat posed by the COVID-19 pandemic in combination with Croft's vulnerable medical condition provide an extraordinary and compelling basis on which to reduce Croft's sentence.[5]

---

[4] The Government appears to argue in the alternative that Croft is not at greater risk for severe illness from COVID-19 simply because "his [medical] conditions . . . are stable and well under control with his medication and treatment."  (Gov't Resp. at 18.)  However, as Croft notes in his Reply Memorandum, the CDC does not distinguish between controlled and uncontrolled hypertension and chronic lung disease when identifying those conditions as possible risk factors for severe illness from COVID-19.  See CDC, Coronavirus Disease 2019, *People of Any Age with Underlying Medical Conditions*.  We thus decline to conclude that Croft's medical conditions do not leave him at greater risk for an adverse outcome from COVID-19 solely because they may be stable and well-controlled.

[5] The Government also asks that we consider that upon Croft's release, he would be living with his brother and sister-in-law in Philadelphia, where, in its view, he would be at higher risk of being infected with COVID-19 than if he remained in FCI Schuylkill.  However, we cannot conclude on the record before us that Croft would be at greater risk of infection living with his family in Philadelphia than he is at FCI Schuylkill.  There is little question that prison facilities are a particularly favorable environment for the transmission of COVID-19 as a result of, among other things, crowded dormitories, shared lavatories, limited medical and isolation resources, daily entry and exit of staff members, introduction of new inmates, and the transporting of inmates in multi-person vehicles.  See CDC, Coronavirus Disease 2019, *Guidance for Correctional & Detention Facilities*,        https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last updated May 7, 2020); Raia, 954 F.3d at 596 (noting that COVID-19 is "a highly contagious respiratory virus which . . . poses unique risks in population-dense prison facilities" (citations omitted)).  Moreover, as noted above, FCI Schuylkill has not conducted widespread testing for COVID-19 so we cannot be sure that its preventative measures have been successful and that the virus is not spreading undetected.  Under these circumstances, Croft will no doubt be at less risk in his family's private home in Philadelphia, where he can freely provide self-care and engage in appropriate infection prevention measures.

Nevertheless, we cannot reduce Croft's sentence unless we also determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[6] U.S.S.G. 1B1.13.  The Government maintains that Croft's criminal history and his underlying crime demonstrate that he continues to be a danger to the community.  We certainly acknowledge that Croft's history of engaging in violent crime and the nature and circumstances of his underlying robbery offense strongly militate against his release.  However, we also observe that Croft is now 63 years old, has spent nearly 25 years in prison for his underlying offense, and appears to have made significant efforts to rehabilitate himself.  Prison records reflect that he has taken numerous education courses while incarcerated, "has held various [jobs] throughout his incarceration[,] . . . receives good work evaluations on a monthly basis[,] requires little to no supervision while completing independent tasks[, and] maintains a positive rapport with his detail supervisor and is often used for non-routine tasks and/or assignments." (Docket No. 218, Attach. 1 at 2-3 of 61.)  BOP records also reflect that, over 25 years, he has been cited with only one infraction 18 years ago for possessing an unauthorized item (which Croft contends was, ironically, bleach).  (Id. at 3 of 61.)  He has also "maintain[ed] a positive rapport [with] staff and inmates at [FCI Schuylkill,] [h]e is consistently noted as being a model inmate who respects authority, adheres to institutional rules and regulations, and serves as a peer mentor to younger inmates."  (Id.; see also Gov't Resp., Ex. A.)  In short, Croft's 25-year prison record

---

[6] "The factors that weigh danger to the community [provided in 18 U.S.C. § 3142(g)] include 'the nature and circumstances of the offense charged,' 'the history and characteristics of the person,' including 'the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history,' and 'the nature and seriousness of the danger to any person or the community that would be posed by the person's release.'"  United States v. Rodriguez, Crim. A. No. 03-271, 2020 WL 1627331, at *11 (E.D. Pa. Apr. 1, 2020) (quoting 18 U.S.C. § 3142(g)).

provides no identifiable support for the Government's contention that Croft is not a changed man. In addition, we are satisfied that upon his release, Croft would be met with the support of family members, who have, as Croft states, agreed to let him live with them.  Accordingly, we conclude that Croft is no longer a danger to the safety of any other person or to the community.

Lastly, we must consider whether releasing Croft would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable.  See 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.  The potentially applicable 18 U.S.C. § 3553(a) factors are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . .
> [and]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

Rodriguez, 2020 WL 1627331, at *11-12 (alterations in original) (quoting 18 U.S.C. § 3553(a)).

Here, as noted above, while Croft's offense was violent and serious, he has already spent nearly 25 years in prison for his crime and is now 63 years old.  Moreover, prison records reflect that, while in prison, he has been a "model inmate" who has had only one infraction.  (Docket No. 218, Attach. 1 at 3 of 61.)  We are confident that the almost 25 years that Croft has served in prison have provided just punishment for his crimes, promotes respect for the law, and reflects the seriousness of his offenses.  We are also confident that the nearly 25-year term of imprisonment affords adequate general and specific deterrence to criminal conduct, particularly when Croft's

sentence is only being shortened to that still-considerable length due to his vulnerable medical condition and the unique circumstances of the current global pandemic.  We further observe that reducing Croft's sentence to time served will permit Croft to administer self-care and take appropriate measures to protect himself from being infected with COVID-19, and thus, provides Croft with necessary medical care in the most effective manner.  Finally, in view of Croft's current age and prison conduct during the last 25 years, we do not believe that further incarceration is necessary to protect the public from his commission of further crimes.  Consequently, we conclude that reducing Croft's sentence to time served is fully consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a).

## IV.    CONCLUSION

For the foregoing reasons, we grant Croft's Motion for modification of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and reduce his sentence to time served.  Croft shall be released from the custody of the Federal Bureau of Prisons with a release plan after his residence is verified and travel arrangements are made.  Upon his release from custody, Croft shall begin serving his previously imposed 5-year term of supervised release.

An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova
John R. Padova, J.